# Washington v. Bogart.

*Bills in Equity to Enforce and Adjust Conflicting Liens
on Real Estate.*

1. *Probate sale of lands; conveyance of title to administrator pur-
    chasing at his own sale, without notice to heirs invalid.*—
    Where, on an application of the administrator, the lands of a

[Washington v. Bogart.]

decedent are sold under order of the Probate Court, and pur-
chased by administrator individually, who reports the pay-
ment of purchase money, and makes an application for an
order for the conveyance of title, such application is regarded
as made in his capacity of purchaser, instead of in his rep-
resentative capacity, and notice to the heirs is essential to the
validity of the order, and when such notice is not given, the
probate court acquires no jurisdiction to adjudicate the ques-
tion of payment, or to order the conveyance of title.

2. *Notice to mortgagees and judgment creditors of infirmity of title
by probate proceedings.*—Mortgagees and judgment creditors
of the purchaser of lands at a sale by order of the Probate
Court are chargeable with notice of the infirmity of the title
by reason of illegality of the proceedings to convey title, and
can assert no lien to such lands as against the prior rights
of the heirs.

3. *Notice of final settlement not sufficient to authorize conveyance of
title.*—The fact that the heirs of the estate are before the Pro-
bate Court on a final settlement of the estate, in which the ad-
ministrator accounts for, and is charged with the purchase
money of lands of the estate purchased by him, and decrees
are rendered in their favor for their distributive interests in
the estate including such purchase money, cannot be con-
strued as notice of an application to convey title to such
lands, made on the same day and on the heels of such
settlement, nor cut off the right of the heirs to enforce their
legal title held as security for the purchase money entering
into such decrees.

4. *Commingling of funds.*—A decree in favor of an heir or distribu-
tee of an estate for his distributive interest including per-
sonal assets as well as the purchase money for lands of the
estate, does not constitute such commingling of funds as to cut
off the right of the heir to enforce his title as security for
the purchase money entering into the decree, if the amount
of such purchase money can be reasonably ascertained.

5. *Lien of registered judgment.*—Registered judgments are liens only
on the property of the defendant in the county where regis-
tered, which is subject to levy and sale under execution,—
property to which the defendant has the legal title or a per-
fect equity,—and where the debtor purchased lands at a pro-
bate sale, and has not paid the whole of the purchase money,
he has no title to which the liens can attach.

6. *Title to lands sold under probate proceedings passes in solido.*—
Where lands of an estate are sold under order of the Probate
Court for division among the heirs, the entire land remains
as security for the whole of the purchase money, and so long
as any part of the purchase money remains unpaid the pur-
chaser has no title, legal or equitable, to the interests of heirs

who have been fully paid to which the lien of a registered judgment may attach.

7. *Imperfect equity subject to mortgage.*—The purchaser of lands of the estate of decedent under order of the Probate Court, before payment of the entire purchase money, or the conveyance of title, may convey his imperfect equity therein by mortgage.

APPEAL from Jackson Chancery Court.

Tried before Hon. WM. H. SIMPSON.

These several consolidated cases and their respective numbers in the court below were as follows: *J. F. Washington et al. v. W. H. Bogart, Adm'r et al,* No. 801; *J. F. Washington, Adm'r, &c. v. W. H. Bogart, Adm'r et al,* No. 802; *Sallie Bell et al. v. W. H. Bogart et al,* No. 804; *W. H. Bogart v. J. F. Washington et al,* No. 805. The appeal is prosecuted by J. F. Washington, individually and as administrator. The cases are stated in the opinion.

J. E. BROWN, for appellant.—The commingling of the purchase price of land and personal property in one decree was a waiver of the lien of the heirs. We do not say that the debts in this case commingled the price of land and personal property, but the debts were merged in the probate decree and thereby commingled so as to be incapable of separation.—*Stringfellow v. Ivie,* 73 Ala. 209; *Wilkinson v. Palmer,* 82 Ala. 367; *Alexander v. Hooks,* 84 Ala. 605; *Sykes v. Betts,* 87 Ala. 537; Freeman on Judgments, 216-217; 15 A. and E. Ency. Law, 315; *Prickett v. Sibert,* 75 Ala. 315. The heirs were before the court on final settlement, and there, charged with notice that the administrator was representing himself, they had the right to elect, in the alternative, whether they would waive the security their legal title afforded them and stand upon the responsibility of the administrator, and his solvent sureties, or withhold the legal title as their security until the purchase money was paid. They did elect to let go such security, and are judicially estopped by the decree from claiming the legal title.—*Dugger v. Tayloe,* 46 Ala. 320; *Ib.* 60 Ala. 504; *Anderson v. Bradley,* 66 Ala. 263; *Ligon v. Ligon,* 84 Ala. 555; *Nunn v. Norris,* 58 Ala. 202; *Pickens v. Yarborough,* 30 Ala. 408; *Strange v. Keenan,* 8 Ala. 816; *Bell v. Craig,* 52 Ala. 215; *Rather v. Young,* 56 Ala. 94;

*Whitworth v. Oliver,* 39 Ala. 286; *Farley v. Dunklin,* 76 Ala. 530; *Wood v. Standley,* 78 Ala. 348; *Jones v. Woodstock Iron Co.,* 95 Ala. 551; *Bogart et als. v. Bell et als.,* 112 Ala. 412. We insist that no notice was necessary to the heirs. Our earlier decisions held no such doctrine and the Code proceedings require none. There is no one to whom the administrator is required to pay the money, and the court will not require him to take the money out of his pocket and see that he has the required amount. It is a useless fiction of the law to require the heirs to have notice that the administrator has paid himself the amount he owes himself before the conveyance. It was a long and well settled rule in Alabama prior to the departure in recent cases, that the sale of land by the probate court was a proceeding *in rem* and not a suit *inter partes;* that when the petition was filed containing jurisdiction facts, the court took the custody of the *res,* and no irregularity would render the proceeding void. The court, not the administrator, was the vendor.—*Wood v. Stanley,* 78 Ala. 348; *Perkins v. Winter,* 7 Ala. 855; *Jennings v. Jennings,* 19 Ala. 367; *Dugger v. Tayloe,* 46 Ala. 320; *Dugger v. Tayloe,* 60 Ala. 504; *Sims v. Sampey,* 64 Ala. 230; *Pollard v. Hanrick,* 74 Ala. 334; *Todd v. Flournoy,* 56 Ala. 99; *Nunn et als. v. Norris et als.,* 58 Ala. 202; *May v. Marks,* 74 Ala. 249; *Farley v. Dunklin,* 76 Ala. 530.

TALLY & PROCTOR, and W. H. NORWOOD, for appellees, Sallie Bell *et al.,* cited, *Allison v. Allison,* 114 Ala. 393; *Bogart v. Bell,* 112 Ala. 412; *Bolling v. Smith,* 108 Ala. 411; *Stringfellow v. Ivey,* 73 Ala. 209; *Ligon v. Ligon,* 84 Ala. 555; *Dugger v. Tayloe,* 60 Ala. 504; *Ketchum v. Creagh,* 53 Ala. 224; *Anderson v. Bradley,* 66 Ala. 263; *Lindsey v. Cooper,* 94 Ala. 170, 184; *Nelson v. Kelly,* 91 Ala. 569; *Bunn v. Timberlake,* 16 So. 97; *May v. Marks,* 74 Ala. 249; *Farley v. Dunklin,* 76 Ala. 530; *Hudgens v. Cameron,* 50 Ala. 379; *Walker v. Carrol,* 65 Ala. 61.

MARTIN & BOULDIN, for appellee, W. H. Bogart, cited, *Bogart v. Bell,* 112 Ala. 412; *Allison v. Allison,* 21 So. 1008, and authorities there cited; *Shaw v. Lindsey,* 60 Ala. 344; *Smith v. Cockrell,* 66 Ala. 64; *Corbitt v. Clenny,* 52 Ala. 481; Code of 1886, 179, 1890, and 1920

[Washington v. Bogart.]

*et seq; Sorrell v. Vance & Kirby,* 102 Ala. 207; *Bell v. Goetter,* 106 Ala. 462; *Mobile Sav. Bank v. Burke,* 94 Ala. 130; *Globe Iron &c. Co. v. Thatcher,* 87 Ala. 458; *Florence B. and S. Assn. v. Schall,* 107 Ala. 531; *Mc-Connell v. Meridian S. & B. Fac.,* 112 Ala. 582.

HARALSON, J.—The foregoing cases were consolidated by agreement of counsel and by order of court, on their trial in the court below, all dependent as admitted, upon the decision of the same questions.

Transcripts in the several cases, were consolidated into one, and the causes were submitted together as one cause in this court, numbered 520.

The bills in 801 and 802 were filed to enforce alleged judgment liens of the complainants therein, on lands mentioned in the bill.

The bill in 804 was filed by the complainants therein, to enforce a vendor's lien on the same lands that complainants in 801 and 802 are seeking to subject to their alleged judgment liens. The case numbered 804, is the same case that was before this court on a former appeal.—*Bogart v. Bell et al.,* 112 Ala. 412.

The question presented in these three cases is one of the competition for superiority between creditors claiming to have judgment liens on lands, over other creditors claiming to have a superior vendor's lien on the same lands; and between these three cases, respectively, and the one numbered 805, as to the superiority of liens claimed in them, over a mortgage from Thos. N. Allison to said W. H. Bogart on the same lands, the contention of Bogart being, that his mortgage is superior to each of said alleged liens, and if not superior to that of Bell and others,—complainants in case number 804,—it is superior to the judgment liens claimed by said Washington in cases numbered 801 and 802. The owner of the lands,—the judgment debtor in the first named cases, and the purchaser of the lands on which complainants in the case numbered 804 claim a vendor's lien,—was Thomas N. Allison, individually or as administrator of the estate of James L. Allison, deceased.

The facts of these cases may be stated as was done by this court in the case of *Bogart v. Bell, supra.* "Thomas N. Allison, as the administrator of James L. Allison, deceased, under order of the probate court, sold the

lands of said estate for the purpose of division among the heirs at law. The sales were made for part cash and part on time. The administrator, himself, purchased one tract of land, reported the sales, and the same were confirmed by the court. In June, 1891, a settlement was made, and the administrator charged himself, or was charged, with the proceeds of the sales, including the price of the land purchased by him, and decrees were rendered in favor of complainants and other heirs of the estate. After the settlement was concluded, and on the same day, the administrator reported the payment of the purchase money, an order for the conveyance of title was made, and deeds were executed accordingly. No notice of said report was given to the heirs. In January, 1895, certain of them (Sallie Bell *et al.*) filed the bill in this case (No. 804) to enforce a vendor's lien on the land purchased by the administrator, for the payment of the decrees rendered in their favor. Appellant, Bogart, claims title under a mortgage executed by Allison to him in May, 1892, to secure an indebtedness to him. Washington and Cowan claim liens under judgments filed and registered in the office of the judge of probate. Thos. N. Allison died intestate December 18th, 1893, and appellant, Bogart, is his administrator."

We there held, that as to the lands purchased by the administrator, his application for an order of conveyance of the title is regarded as made in his capacity of purchaser, instead of in his representative character, and notice to the heirs was essential to the validity of the order; and when such notice had not been given, the probate court acquired no jurisdiction to adjudicate the question of payments, or to order a conveyance to the purchaser. Moreover, it was held that in such a case, a mortgage or a judgment creditor of such administrator, is chargeable with notice of the infirmity of title to the land so purchased, and can assert no lien to such lands as against the prior rights of the heirs.

This was the same doctrine as declared in *Bolling v. Smith,* 108 Ala. 411, and still later, in *Allison v. Allison,* 114 Ala. 393. This last named case was another branch of this case. There, one of the heirs sued in ejectment to recover these same lands which Bogart, as administrator of Allison, had taken into his possession, and

rented to the defendants in that case.    The decision involved the title of said lands, as derived by said Allison under his purchase of them at his own sale as administrator.    The facts were the same as in *Bogart v. Bell.* Justice COLEMAN, speaking for the court, said:  "The principle of law upon which the decision rests (holding that the deed executed to said Allison under the orders of the probate court, was void on collateral attack) has been so long established by the decisions of this court, that it has become a rule of property, and  *  *  *  we are of opinion, that upon principle as well as the doctrine of *stare decisis,* the rule should stand,"—citing our former cases.

This question must be considered, therefore, at rest in this court, which necessitates an affirmance of the three causes numbered above, unless there has been brought into them features to distinguish them from the case as heretofore presented to us.    This is attempted to be shown, but, as we take it, without success.  It is said, there has been such a commingling of funds from the sale of lands by the administrator and from the sale of personal property, as to render it impossible to distinguish what portion of the debt was for land, and what portion came from other sources.    We said in *Bogart v. Bell,* on that subject, on the same facts as are now before us, "that there was no such confusion of accounts and funds as to render it impracticable for a court of equity to separate the purchase money entering into the decrees, from other funds."    And, the fact is, the chancellor in this case did not find it impracticable to do so, but did ascertain by his finding on the evidence, what part of the purchase money arising from the sale of said lands, actually entered into said decrees, and rendered his decree accordingly.

The judgments in the two cases, 801, 802, if that fact is of any importance, were not recorded in the probate court until 1890, the one on September 30th and the other on 31st December of that year; and the lands were sold and the alleged decrees of confirmation were made in the probate court more than a year before; and as said confirmation of said sale and the conveyance thereunder, before the payment of the entire purchase money, rendered such confirmation and conveyance null and of no effect as to the heirs who had not been paid

their respective parts of said purchase money, there was no title to which said recorded judgments could attach. Judgments when registered properly, give a lien upon all the property of the defendant in the county where registered, which is subject to levy and sale under execution, (Code of 1896 §1921); and by section 1890 (2892), it is provided, that "executions may be levied on real property to which defendant has a legal title, or a perfect equity, having paid all the purchase money, or in which he has a vested legal interest." Here, the debtor did not have the legal title, nor a perfect equity, for he had not paid the purchase money for the lands he bought, and the title, legal and equitable, remained in the heirs.—Code, 1896, §179 (2124); *Shaw v. Lindsay,* 60 Ala. 344; *Smith v. Cockrell,* 66 Ala. 75.

Nor does the fact that the heirs were before the court on the final settlement of the accounts of the administrator, and that the alleged confirmation by the court of said sale by the administrator to himself of said lands, occurred on the same day, on the heels of that settlement, avail said judgment creditors anything. That proceeding was purely *ex parte,* distinct from the proceedings for final settlement, and notice to the heirs of such settlement cannot be held or construed to be notice to them of the proceeding for the confirmation of the said sale by the administrator to himself.

Nor, again, can it be said, that the alleged judgment liens would attach to the interest of the heirs whose decrees had been fully paid and satisfied, if any of such decrees remained unpaid. The title under the statute, cannot be made to the purchaser until the whole of the purchase money for the land has been paid.—Code of 1896, §179, (2124). The unpaid heirs may subject the whole of the lands to the satisfaction of their demands. The court will not split up an entire sale into several separate ones, for the whole, and not a part of the lands sold, remains as a security for the entire purchase money, and cannot be diminished by any action of the court.—*Corbitt v. Clenny,* 52 Ala. 480; *Ketchum v. Creagh,* 53 Ala. 224; *Wallace v. Nichols,* 56 Ala. 321; *Gardner v. Kelso,* 80 Ala. 500.

We fail to discover anything distinguishing the case, now, in principle, from what it was on the former appeal. The decree of the court in granting the relief

[The Smith-Dimmick Lumber Co. v. Teague, Barnett & Co.]

sought in the case of *Bell et al. v. Bogart et al.*, 804, and denying the relief sought in, and dismissing the two cases of Washington, Nos. 801 and 802, must be affirmed.

What we have said, in effect disposes of the Bogart case, number 805. The complainants in 801 and 802, as we have shown,—granting that these judgments were duly and legally recorded, a question we do not decide,—acquired no lien on the property in question, because the defendant in said judgments had no title legal or equitable to which a recorded judgment lien could attach. So, those recorded judgments did not stand in the way of Bogart's subsequent mortgages from said Allison, for whatever imperfect equity Allison had in the lands and for what they were worth.—Jones on Mortgages, §§136, 138; *Fenno v. Sayre*, 3 Ala. 458; *Patapsco Guano Co. v. Ballard*, 107 Ala. 710. The chancellor so decided, and the correctness of the decision to that extent does not appear to be denied. The decree as to this case, as in the others, must be affirmed.

Affirmed.