[Langley v. Langley, *et al.*]

# Langley *v.* Langley, *et al.*

### *Bill in Equity to Enforce Vendor's Lien.*

1.  *An administrator buying land at his own sale vested with
    inchoate equity; purchasers and sub-purchasers from him
    not innocent purchasers.*—The probate court granted to two
    administrators on their application an order to sell the land
    of the estate, the payments to be one-half cash and the
    remainder on credit; the sale was made and one of them
    became the purchaser and executed his promissory note to
    his co-administrator for the deferred payment of the pur-
    chase money; the sale was confirmed before maturity of the
    note and a deed was made to the purchaser by a person
    appointed by the court. The purchasing administrator did
    not make the cash payment or pay his note given for the
    purchase money, but sold and conveyed the land and then
    resigned his administration and was discharged therefrom
    by decree of the probate court; there were other conveyances
    of the land to different parties and by them to still other
    parties; the remaining administrator brought his bill in
    equity against his former co-administrator and the heirs of
    the intestate and the purchasers of the land to enforce the
    vendor's lien. The bill was dismissed for want of equity.
    *Held*, that the administrator purchasing at the sale made
    under the order of the court, did not acquire the legal title
    to the land by the deed executed to him, but only an inchoate
    equity which on full payment of the purchase money would
    ripen into a perfect equity; and the purchaser from him and
    his sub-vendees were not purchasers for value without notice,
    although they purchased in ignorance of the fact that the
    purchase money had not been paid, and although the deed
    to the purchasing administrator was made under order of
    court.

2.  *Promissory note by one administrator to another of the same
    estate an asset and has lien on land for which given.*—Where
    there are two administrators of an estate and one of them
    becomes purchaser of land of the estate sold under order of
    the probate court issued to them, and in part payment of the
    purchase money, gives his co-administrator his promissory
    note and is then discharged from the administration, the
    promissory note is an asset of the estate, which the remaining

[Langley v. Langley, *et al.*]

administrator may collect by proceedings to enforce the vendor's lien.

3. *Settlement of administrator when void.*—A decree rendered on any settlement made by an administrator after resignation without notice to the remaining administrator, as required by the statute, would be void.

4. *When intervening purchaser not proper party to bill to enforce lien.*—An intervening purchaser of land between the original purchaser and the last vendee, who has parted with his interest by conveyance, is not a necessary or proper party to a bill to enforce the vendor's lien brought by the original vendor.

5. *Complainant should be allowed to amend defective bill.*—Where a bill is defective and subject to demurrer filed to it, and is dismissed for want of equity, the ends of justice are best accomplished by reversing the decree and remanding the cause with directions to allow the complainant to amend as he may be advised.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. J. R. DOWDELL.

F. E. Langley and W. T. Langley, as administrators of John J. Slaughter, deceased, obtained from the probate court of Tallapoosa county an order to sell lands of the estate. The terms of sale were one-half cash and the balance of purchase money at twelve months. W. T. Langley having become the purchaser of a part of the lands, executed his promissory note to his co-administrator for the deferred payment, but did not make the cash payment. The sale was confirmed by the probate court, and J. Percy Oliver was appointed to execute deed to W. T. Langley, which he did. Said Langley sold and conveyed said land so purchased by him and resigned his administratorship and was regularly discharged therefrom by the decree of the probate court. F. E. Langley as sole administrator filed the bill in this case to enforce the lien for the purchase money. On hearing the cause the chancellor dismissed the bill for want of equity, declining to rule on the demurrer.

J. M. CHILTON and THOMAS L. BULGER, for appellant. Where there are two administrators and one becomes indebted to the estate for the purchase money of land of the estate bought by him in the course of administration

of which he is put in possession, but for which he does not make payment, the remaining administrator may after the resignation of the debtor administrator maintain a bill to enforce a vendor's lien. There is a clear distinction between such case and a case where an attempt is made against an administrator during his continuance in office by his coadministrator.—*Wallace v. Nichols,* 56 Ala. 321; *Ketchum v. Creah,* 53 Ala. 224; *McCully v. Chapman,* 58 Ala. 325; *Boling v. Smith,* 108 Ala. 411.

GARRETT & LACKEY, for Jno. E. Heard.—(1). Heard is not a proper party defendant. If an administrator purchases land of the estate of his intestate he is chargeable on his settlement with the purchase money; the moment the money becomes due the debt is extinguished and the money is assets in his hands. Hence, if his coadministrator could collect from him the result would be that he would be subject to a double liability.—*Childers v. Childers,* 3 Ala. 752; *Ward v. Oates,* 42 Ala. 225; *King v. Shackelford,* 6 Ala. 423; *Duffey v. Buchanan,* 8 Ala. 27; *Ligon v. Ligon,* 84 Ala. 555; *Knight v. Haynie,* 74 Ala. 542. (2). An administrator cannot maintain a suit either at law or in equity against his co-administrator for an accounting of the assets in his hands belonging to the estate.—*Cook v. Cook,* 69 Ala. 249; *Hendricks v. Thornton,* 45 Ala. 289.

TYSON, J.—The bill in this cause was filed by the appellant as administrator of the estate of Slaughter and seeks to enforce a vendor's lien upon certain lands there in described which were sold by an order of the probate court of Tallapoosa county for division amongst the heirs. It is alleged in the bill that the petition for the sale of these lands was filed by the complainant and one of the respondents, W. T. Langley, who was a co-administrator with the complainant; that the lands were ordered to be sold by the administrators for one-half cash and the remainder on twelve months' credit. At the sale on the 23d day of November, 1893, the respondent, Langley, became the purchaser at and for the price of $1,283.-20, and gave his note to the complainant for the de-

ferred payment due Nov. 23, 1894; that he never made the cash payment nor has he ever paid the note. It is further alleged that a report of the sale was made to the probate court, in which it was stated that the respondent, Langley, had paid the cash payment, which was untrue, and that no report has ever been made that the deferred payment was paid, that notwithstanding the terms of sale were partly for credit, before the maturity of the deferred payment the probate judge appointed Oliver and commissioned him to execute a deed to Langley as purchaser, and Oliver, on the 3rd day of July, 1894, executed a deed to him. The remaining allegations of the bill aver a sale of the land by Langley, the purchaser, to certain other respondents, and contract of sales by some of his grantees to certain other defendants, and the resignation by Langley the respondent as administrator of said estate and decree entered by the probate court on the 17th day of November, 1896, discharging him from any further administration of said estate, leaving the complainant at the time of the filing of the bill as the sole administrator.

Under these averments it is too clear for disputation that the deed to Langley as purchaser did not convey the legal title to the land, but only vested in him an inchoate equity which upon full payment of the purchase money would ripen into a perfect equity, and the purchaser from him or his sub-vendees cannot claim the protection afforded to purchasers for valuable consideration without notice; although they bought in ignorance of the fact that the purchase money had not been paid and although the conveyance to Langley was made under an order of the court.—*Cruikshank v. Luttrell,* 67 Ala. 318; *Wallace v. Nichols,* 56 Ala. 321; *Ketchum v. Creagh,* 53 Ala. 224; *Balling v. Smith,* 108 Ala. 411; *McCully v. Chapman,* 58 Ala. 325; *Ligon v. Ligon,* 84 Ala. 555; *Anderson v. Bradley,* 66 Ala. 263; *Washington v. Bogart,* 24 So. Rep., 245; s. c. 119 Ala. 377; *Bogart v. Bell,* 112 Ala. 412; *Allison v. Allison,* 114 Ala. 393.

The main question presented is, whether the complainant can maintain this bill, his co-administrator being the purchaser at the sale of the lands, not having paid any portion of the purchase money and having resigned and

been discharged by the probate court, before the filing of
this bill? The contention of appellees is that as the re-
spondent Langley was the seller and purchaser the mo-
ment he contracted the debt for the purchase of the
lands, it was extinguished and it became assets in his
hands as administrator, and he was chargeable with the
amount as if he had collected the money or converted
the property of the estate into money. And in support
of this contention they cite the cases of *Childress v. Chil-
dress*, 3 Ala. 752; *Ward v. Oates,* 42 Ala. 225; *King v.
Shackelford,* 6 Ala. 423; *Duffy v. Buchanan,* 8 Ala. 27;
*Ligon v. Ligon,* 84 Ala. 555; *Knight v. Haynie,* 74 Ala.
542; *Cook v. Cook,* 69 Ala. 249

We do not doubt the soundness of the principles upon
which the opinions in those cases are made to rest. No
one can doubt that complainant could not maintain this
this bill so long as the respondent Langley was his co-ad-
ministrator. The reason for the rule is clearly stated in
*King v. Shackelford* to be "that where there are several
executors, each has a right to receive the debts and other
assets of the estate; and a payment of the sums received
by him, to his co-executor, will not discharge his liability
to the estate. Further that executors are not liable to
each other, but each is liable to the *cestuis que trust* and
devisees to the full extent of the funds received by him."
No such relation as that exists in this case. And the
complainant alone is now responsible for the adminis-
tration of the assets of the estate. Can it be doubted
that Langley's promise to pay the price of land, which
he has never paid, going into possession under the pur-
chase and reselling it as owner, is an asset of the estate?
Suppose both the Langleys had resigned as administra-
tors at the same time and the court had appointed an ad-
ministrator *de bonis non,* it would hardly be contended
that such administrator *de bonis non* could not enforce
the lien for the purchase money. The cases of *Ketchum
v. Creagh, Cruikshank v. Luttrell, Wallace v. Nichols,*
cited above, were bills by administrators *de bonis non* to
enforce vendor's liens against the purchaser at sales
made of lands under an order of the probate court. And
in the case of *Cruikshank v. Luttrell,* the administrator
had the purchaser at the sale who was unable to pay the

purchase price bid by him to transfer his certificate of purchase to him, the administrator, and he resold the lands to Luttrell at private sale, taking his notes for the purchase money. Yet this court did not. say, that the administrator only became chargeable with the purchase money as if he collected it or converted the lands into money upon a settlement of the estate by the outgoing administrator with the administrator *de bonis non.* On the contrary it held that the administrator *de bonis non* could enforce a vendor's lien upon the lands. Section 241 of the Code of 1896 (2173, Code, 1886) required respondent Langley within one month after his resignation, to make final settlement of his administration of the estate; and of which settlement notice was required to be given. Section 242, Code 1896, (Code 1886, § 2174) provides that the *remaining* or succeeding executor or administrator of the estate, if there be one, must be a party to such settlement and is entitled, if a resident of the State, to personal notice at least ten days before the day appointed for the settlement. That the remaining administrator is a necessary party cannot well be doubted. Indeed, the decree rendered on any settlement made by the administrator after resignation, without notice to the remaining administrator as required by the statute, would be void. As said in *Hatchett v. Billingslea*, 65 Ala. 17, "The object of the notice is that the administrator may appear at the settlement and have an opportunity to contest the account. This is eminently necessary and just; for as the law now stands (Section 244, Code 1896, [§ 2176, Code 1886]), a decree may be rendered against him, in favor of the outgoing administrator; and if the estate be solvent, an execution may be ordered thereon, under which the assets of the estate may be sold away from his possession and control." And the learned judge might have stated further that in the event the outgoing administrator was indebted to the estate, the decree must be rendered in favor of the remaining administrator. Section 243, Code 1896, (§ 2175, Code 1886). On the inquiries, of a balance due the outgoing administrator and of the solvency of the estate, the estate and remaining administrator should be represented. In such a settlement the resigned administrator

is the party on the one hand and the continuing administrator or succeeding administrator (administrator.. *de bonis non*) is the adverse party. *Hatchett v. Billingslea, supra.* Section 250 of Code 1896 (Code 1886, §.2182), provides that "the proceedings for the settlement of the accounts of deceased or outgoing executors or administrators, provided for in this article, do not prevent any action by the *remaining* or succeeding administrator or by any person entitled thereto against such executor. or administrator or his personal representative, for any property remaining in his hands or *for any other cause of action.*" The settlement required of a resigned administrator is in the same article with this section and it indeed immediately succeeds those providing the manner by which such a settlement is to be had. It will be observed from reading section 241, that it requires settlement to be made by an administrator when removed. We hold that under this section had the respondent Langley made a settlement of his administration of the estate after his resignation, that this would not preclude the complainant from maintaining this suit. to enforce a vendor's lien upon the land for the purchase money confessedly due by him. Unless we disregard the opinion in the case of *Hendricks v. Thornton,* 45 Ala. 299, the right of the complainant to maintain this bill is conclusively determined by it. The only difference between that case and the one under consideration is, in that case the outgoing administrator was removed and here the outgoing administrator resigned. This difference can make no possible distinction between the two, since as we have stated, the method of procedure in both are provided by the same statutes. We adhere to the opinion of the court in that case as to what is there said as to the right of the remaining administrator to maintain the suit.

The conclusion reached by us in this case is recognized in the case of *Cook v. Cook, supra,* where it is said, "The only case where a decree is authorized in favor of one personal representative against another, is where there is a removal, a resignation or revocation of the letters of an executor or administrator or his authority ceases for any cause; in such case a decree may be rendered in

[Edwards, *et al.* v. Bender, *et al.*]

favor of a remaining or succeeding executor or administrator."

While it is unnecessary to consider demurrers, where a bill is dismissed for want of equity, unless they raise the same question as raised by the motion to dismiss, as the bill may be amended to meet defects pointed out by them, yet, in this case, for the purposes of further proceedings in this cause, it would be well for us here to say that the respondent, J. E. Heard, is not a proper or necessary party to the bill; the averment as to him shows that he parted with his interest in the lands by conveyance to James A. Heard, although there is no ground of demurrer raising the question. If a bill is defective and subject to demurrer filed to it, where it has been dismissed for want of equity, the ends of justice are best accomplished by reversing the decree and remanding the cause, with directions to allow the complainant to amend as he may be advised. *Cruikshank v. Luttrell, supra.*

The decree of the chancellor dismissing the bill must be reversed and annulled, and the cause is remanded.

Reversed and remanded.